**Kenneth R. OMASTA, Plaintiff,**

v.

**THE CHOICES BENEFIT PLAN, Reliance Standard Life Insurance Company, a Philadelphia corporation, and Telos Corporation, a Maryland corporation, Defendants.**

No. 2:01–CV–686–TS.

United States District Court,
D. Utah,
Central Division.

Dec. 23, 2004.

---

See, also, 2004 WL 3015745.

Mark A. Riekhof, Esq., Dunn & Dunn, Salt Lake City, UT.

Joshua Bachrach, Esq., Rawle & Henderson, Philadelphia, PA.

Mr. Donald J Winder, Esq., Winder & Haslam, Salt Lake City, UT.

Eric P. Swenson, Esq., Winder & Haslam, Salt Lake City, UT.

James S. Jardine, Esq., Ray Quinney & Nebeker, Salt Lake City, UT.

Michael J. Klisch, Esq., Cooley Godward LLP, Reston, VA.

Robert R. Vieth, Esq., Cooley Godward LLP, Reston, VA.

ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM AND DENYING PLAINTIFF'S REQUEST FOR DISCOVERY

STEWART, District Judge.

This matter is before the court on Plaintiff's Renewed Motion for Summary Judg-

ment and Defendant's Renewed Motion for Summary Judgment.

## I. PROCEDURAL BACKGROUND

Plaintiff challenges the decision of defendant Reliance Standard Life Insurance Company (Reliance) to deny Plaintiff's claim for long-term disability benefits under his employer's group benefit plan. Previously, this court denied, without prejudice, the parties' competing Motions for Summary Judgment because the confused and jumbled state of the record filed precluded adequate review. Reliance subsequently filed a new version of what it characterizes as its administrative record, and the parties re-filed their Motions for Summary Judgment. However, Plaintiff continues to object to the Administrative Record and to seek additional discovery.

Hearing on the current Motions was originally held on March 4, 2004. At that time the parties informed the court of the petition for rehearing on the *Fought* case. The court ruled in favor of Defendants on the issue of the existence of an ERISA-qualified Plan and held that the Plan gives Defendant Reliance discretion. However, in view of the pending request for rehearing in *Fought*, the court took the remaining issues under advisement. On August 13, 2004, the Tenth Circuit issued its *per curiam* decision in *Fought v. Unum Life*, 379 F.3d 997 (10th Cir.2004), vacating its prior order and substituting a revised opinion. The court set the matter for further argument in light of the *Fought* decision. However, upon full review of the entire record under the standard set forth in the *Fought* decision, the court determined that further argument would not be helpful.

## II. STANDARD OF REVIEW

In *Fought, supra,* the Tenth Circuit determined the standard of review under ERISA for decisions by a plan administrator, or by the entity to whom such duties of administration have been delegated. The court noted that where the plan expressly gives a defendant, as plan administrator, the discretion to determine whether to deny a claimant insurance benefits under the plan, a court reviewing a challenge to a denial of employee benefits applies an arbitrary and capricious standard to a plan administrator's actions. Under that standard, the court is limited to review of the " 'administrative record'— the materials compiled by the administrator in the course of making his decision." *Id.* at 1003.

> The possibility of an administrator operating under a conflict of interest, however, changes the analysis. Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1282 (10th Cir.2002). " . . . [such] conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. "The rationale for this approach is clear. A conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries." *Brown v. Blue Cross & Blue Shield, Inc.,* 898 F.2d 1556, 1565 (11th Cir.1990) . . .

When the plan administrator operates under either (1) an inherent conflict of interest, Kennedy, Judicial Standard, 50 AM. U.L.REV. at 1173; *see also Pitman,* 217 F.3d at 1296 n. 4 (noting that "as both insurer and administrator of the plan, there is an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound"); (2) a proven conflict of interest; or (3) when a serious procedural irregularity exists, and the plan administrator has denied coverage, an additional reduction in deference is appropriate. Under this less deferential standard, *the plan administrator bears the burden of proving the reasonableness of its decision* pursuant to this court's traditional

arbitrary and capricious standard. *See* Kennedy, Judicial Standard, 50 AM. U.L.REV. at 1174. In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence. *The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest.... [T]o further protect participants and beneficiaries in such conflict of interest contexts, [courts should] shift[ ] the burden to the fiduciary to justify the reasonableness of its decision.* This puts the plan administrator on notice that its decisions will be judged for their reasonableness and provides the courts with a record that must show that the conflict of interest did not taint such decision. Such a result is still consistent with the *Firestone* admonition to consider as a factor any conflict of interest, but provides more direction for the courts in the application of the reasonableness standard.

\* \* \* \* \* \*

Under the standard we have set forth in this opinion, *[defendant] was required to justify its decision to exclude coverage by substantial evidence.*

*Fought,* 379 F.3d at 1003–1008 (underlined emphasis added, footnotes omitted and internal quotations and citations partially omitted).

■ In the present case, as in *Fought,* defendant, as " 'claims administrator' and insurer, has an inherent conflict of interest, yet persistently resisted discovery." *Id.* This inherent conflict is established because every claim that Reliance allows is money that it, as the insurer, must pay. In these circumstances where there is a direct conflict of interest, this court "is required to slide along the scale considerably and an additional reduction in deference is appropriate." *Id.* at 1007.

■ Further, as recent case law has made clear, the court is not always restricted to the administrative record when applying an arbitrary and capricious standard if the record shows that defendant had knowledge of additional and readily available information that may have shown an entitlement to benefits. In *Gaither v. Aetna Life Ins. Co.,* 388 F.3d 759 (10th Cir.2004), the court held as follows:

> Nor do we suggest that the administrator must ... consider whether further inquiry might unearth additional evidence when the evidence in the record is sufficient to resolve the claim one way or the other.

\* \* \* \* \* \*

Rather, we assert the narrow principle that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory. *See Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463–64 (9th Cir.1997) (finding Aetna's denial of benefits arbitrary and capricious because, despite a straightforward explanation of the basis of the claim, Aetna did not ask for confirmatory evidence "easily obtainable" from the plaintiff's dentists); ... *Woo v. Deluxe Corp.,* 144 F.3d 1157, 1161 (8th Cir.1998) (finding that when a beneficiary was diagnosed with scleroderma several months after leaving her job, it was improper for the administrator to deny benefits merely because, as of her termination date, no doctor had found her disabled; instead, it should have had a scleroderma expert review her earlier

symptoms to determine when the disability started).

Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of a legitimate claim. The authority just cited suggests that Aetna has the wrong model. Indeed, one purpose of ERISA was "to provide a nonadversarial method of claims settlement." *Sandoval*, 967 F.2d at 382. In *Gilbertson v. Allied Signal, Inc.*, we explained what this nonadversarial process should look like:

[ERISA and its implementing regulations require] a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied ... the reason for the denial must be stated in reasonably clear language, ... [and] *if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.* There is nothing extraordinary about this: it's how civilized people communicate with each other regarding important matters. 328 F.3d 625, 635 (10th Cir.2003).

While a fiduciary has a duty to protect the plan's assets against spurious claims, *it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.*

*Gaither*, 388 F.3d at 773–75 (citations partially omitted and underlined emphasis added; italicized emphasis in original).

In *Gaither*, unlike the present case, there was no conflict of interest and the case was decided under the most deferential application—the arbitrary and capricious standard. Nonetheless, in *Gaither* the circuit court reversed the district court's decision because it found that the plan administrator's decision was arbitrary and capricious. The court found that the Plan Administrator had not provided the insured adequate notice of the standard it was deciding the claim under, or give him "fair warning" of the evidence that he needed to provide. *Id.* at 775. It ordered that on remand, "the plan administrator is required to reconsider its decision in light of the entire record, and to request *and obtain additional documentation if necessary* to determine [plaintiff's] eligibility for disability benefits." *Id.*

■ With these standards firmly in mind, the court turns to the undisputed facts. The court notes that the issue of whether or not Reliance's denial of benefits was arbitrary and capricious is for the court to determine. This determination commonly arises in the context of the parties' submission of a case pursuant to summary judgment motions. However, it is more accurately considered as an appeal from an administrative decision. Thus, the court disagrees with Plaintiff's position at the hearing that the presence of conflicting medical opinions, such as differing opinions of experts, requires a denial of the motions and a trial on the merits. Instead, in making its determination of whether the decision was arbitrary and capricious, the presence of conflicting evidence on the disability issue is a factor that the court considers in making its determination of whether the administrator's decision to deny benefits was arbitrary and capricious. In making its decision, the court may affirm the administrator's decision, reverse that decision and award benefits, or remand for further proceedings. *See Caldwell v. Life Insurance Co. of*

*North America,* 287 F.3d 1276, 1289 (10th Cir.2002)("A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious or 'the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'")(quoting *Gallo v. Amoco Corp.,* 102 F.3d 918, 923 (7th Cir.1996))(other internal citations omitted).

## III. BACKGROUND

The following facts are not in dispute except where noted: Plaintiff was a very successful employee of Telos for nearly 22 years. In 1997, Plaintiff was a Vice President, working 10–hour days in a stressful job. Mark Hester worked with Plaintiff for twenty years and was Plaintiff's supervisor and also Telos' CEO up through mid–2000. Mr. Hester describes Plaintiff as a "dedicated" and "superb" employee who "relished in a competitive environment." Rec. at 92. In 1998 and 1999, Plaintiff began having memory problems, headaches, and motor problems. He consulted a doctor and was referred, and referred again, to more doctors for more tests and evaluations. He went to physical therapy and speech therapy. On August 15, 2000, he was laid off from his job and was awarded short-term disability. The short-term disability is not at issue in this case.

Plaintiff applied for social security disability and also applied for long-term disability under a group insurance policy from Reliance, paid for by his employer Telos. All five of Plaintiff's treating medical providers, (physicians, psychologist, speech pathologist and chiropractor), certified him as disabled and he was awarded social security disability in August 2000.

Plaintiff contends that he is permanently disabled due to cerebral vascular or demyelinating disease, and neurological defi-

cits and musculoskeletal disease. Under the musculoskeletal disease, his primary care physician, Dr. Wade, certified that due to severe osteoarthritis, resultant severe pain, etc., he cannot sit for more than 20 minutes, stand for more than 5 or 10 minutes, walk for any length of time, and must avoid stairs. Dr. Wade also noted Plaintiff's inability to focus, changes in cognitive ability, and many other debilitating symptoms that "substantially interrupt his activities of daily living." Rec. 73.

Dr. Ottowicz, a neurologist, examined Plaintiff and on March 17, 2000, reported that he could have "late onset MS," a primary demyelinating condition that is responsible for his present presentation." Rec. at 102. Dr. Ottowicz had examined Plaintiff earlier, in 1999. On September 8, 1999, he referred Plaintiff for an MRI, which produced findings "compatible with primary demyelinating disease in a patient this young." Rec. 131.

Reliance had Plaintiff examined by a psychologist, Dr. Weight, PhD. Dr. Weight's qualifications and title are in dispute. Dr. Weight conducted his own intelligence and other tests. Dr. Weight reviewed many of Plaintiff's medical records and, unlike all of Plaintiff's health care providers, opined that Plaintiff was malingering and that he was not disabled. Dr. Weight's report is the source of much negative interpretation of information about Plaintiff, an interpretation that Reliance's other experts, who did not themselves examine Plaintiff, have then repeated as a basis for opining that he is not disabled. For example, Dr. Weight seized upon the information, from Plaintiff's July 27, 2000, examination with Dr. McBride, a psychologist, that Plaintiff does "some gardening and pruning of trees" ... "runs errands for the family" ... "works cross word puzzles" and exercises on a treadmill or stationary bike.

There is no information that Dr. Weight is in any way qualified to diagnose neurological disease or its symptoms. Dr. Weight's opinion regarding Plaintiff's alleged malingering is unsupported by any other information in the record, and is contradicted by the opinions of his doctors, his former supervisors and co-workers and his long and successful employment history. Dr. Weight's report notes that he did not have the benefit of tests ordered by Dr. Black at St. Marks Hospital. Rec. at 180. Yet, those tests, dated November 1999, showed significant deficits in areas of cognitive abilities, supporting Plaintiff's position.

Following Dr. Weight's review, Reliance sent its version of Plaintiff's records to several other health care providers for review, including another psychologist, Dr. Chelder. Dr. Chelder performed a review, did not reference the VA records, and limits his opinion:

> As my area of specialty is neuropsychology, I will confine my opinions to Mr. Omasta's neuropsychological status. *It is understood that there are other medical diagnoses that may also affect his overall level of impairment.*

Rec. at 198 (underlined emphasis added).

The records were then sent to Dr. Fenichel. Her report, dated October 22, 2000, stated that she did not have all of the VA records but opined that Plaintiff did not have significant impairment for sedentary occupation and did not have an Axis I psychiatric disorder that has rendered him disabled. Rec. 399–404.

On November 7, 2000, Plaintiff was denied benefits by Reliance. He appealed the denial on January 3, 2001. On March 12, 2001, Reliance sent Plaintiff's counsel a notice that the appeal process would take more than 60 days and solicited any additional information that Plaintiff wished to be considered for the review process. Rec. 421.

On February 21, 2001, Plaintiff's counsel sent Reliance Plaintiff's VA records and the information that Plaintiff had begun his treatment under the VA Multiple Sclerosis (MS) program protocol the previous week.

In support of Plaintiff's appeal, Telos' CEO wrote that Plaintiff had been terminated because he lacked "full cognitive ability, focused thought, planning and execution." This position is supported by letters from others who worked with Plaintiff and noted his impaired abilities.

Plaintiff's medical records from the VA, include material from Dr. Rose, a neurologist, showing that Plaintiff's MRI is abnormal for a patient of his age. Plaintiff was started on the VA's MS treatment program. Reviewing the same most recent MRI, Dr. Ottowicz, noted that Dr. Rose repeated his (Ottowicz's) earlier tests and found there were increased distributions highly suggestive of a demyelinating condition such as MS. Rec. 428–9.

Reliance sent its version of Plaintiff's records back to Dr. Fenichel. Dr. Fenichel reviewed the medical file, including the VA records she was missing from her first report. Her report is dated January 23, 2001, the day before Plaintiff's January 24, 2001, MRI and evaluation by neurologist, Dr. Rose, at the VA. Second Fenichel report, Rec. 394–98. Thus, she did not have the opportunity to review those records.

Dr. Fenichel's second report stated that her review of records did not change her earlier opinion that Plaintiff did not have an Axis I *psychiatric* disorder that rendered him disabled. Rec. 389. However, acknowledging that she still did not have all necessary information, she opined:

> It is *necessary* to obtain updated records from the VA neurology Clinic to determine if [Plaintiff's] diagnosis is primary progressive MS. *If [Plaintiff] has MS,*

*then his disability could be based on the neurologic condition of MS and not on an alleged psychiatric condition.*

 \* \* \* \* \* \*

I strongly recommend that you obtain the updated records from the VA regarding the evaluation in January 2001 *to determine if [Plaintiff] has a neurologic condition that has been the cause of his unusual presentation.*

Rec. 398 (underlined emphasis added).

Thus, Dr. Fenichel specifically does not opine regarding Plaintiff's claim of a neurologic condition. Among the records that she reviews are Dr. Weight's report, written before he had an opportunity to view any of the VA records or the testing performed at the request of Dr. Black. Further, although Dr. Fenichel reviews records from his employment, she does not opine on whether or not Plaintiff is disabled due to a musculoskeletal problem.

The updated VA records were later sent to Reliance's expert, Dr. Hauptman. Dr. Hauptman's review opined that while Plaintiff may have MS, his symptoms do not support impairment. Rec. 379. However, his review is partly based on the reports of Dr. Fenichel and Dr. Weight, doctors that Reliance knew did not have the benefit of all necessary medical information at the time they made their reports.

Further, Dr. Hauptman's opinion that the medical records do not support an impairment from a sedentary occupation based upon musculoskeletal complaints is not reasonably based in the record. Dr. Hauptman's review consists of discounting all of the substantial information supporting Plaintiff's claim of disability. For example, he entirely discounts the social security finding of disability because it did not include any analysis of the patient's medical condition upon which it was made-information not communicated to Plaintiff's attorney in time to provide any infor-

mation. The substantial documentation of Plaintiff's unsteady gait and inability to perform physical tasks are discounted because Dr. Hauptman found them inconsistent with other information. Although Dr. Hauptman is certified in "quality assurance and utilization review," the record does not provide for support that he is qualified to opine regarding Plaintiff's series of MRIs. Nonetheless, he opines that Dr. Ottowicz's opinion that the latest VA MRI shows an increase in distribution of lesions is "not entirely true and misleading." Rec. 385.

Dr. Hauptman discounted the majority of Dr. Pompa's findings and instead focuses on a small part of Dr. Pompa's findings-that his retention of material was excellent-while discounting her other findings that Plaintiff's deficits in other areas were likely to interfere with his work performance. Rec. 255. Similarly, Dr. Hauptman entirely discounts the findings of the speech pathologist who worked with Plaintiff for several weeks as to memory problems because he finds them inconsistent with that small portion of Dr. Pompa's findings.

In Reliance's file is a Quality Appeal Review Summary, Rec. 404–05, that includes date notations by major appeal events. However, unlike all of the other significant dates, there is no completed date by the reminder to "send uphold letter to attorney with copies of report from Fenichel and Hauptman." Rec. 405. Thus, the record does not support Reliance's position that the appeal denial letter was sent, and the record therefore closed, on April 10, 2001.

Reliance does not dispute that Plaintiff sent additional medical records after April 10, 2001, it only disputes that it has to include them in the "administrative record."

In August, 2001, Plaintiff's attorney contacted Reliance and asked about the decision on review. Reliance responded that the decision had been made and then sent Plaintiff's counsel a denial letter dated April 10, 2001.

## IV. APPLICATION OF STANDARD

Taking a hard look at all of the evidence and arguments presented to the claims administrator, the record submitted by Reliance reveals that it arbitrarily and capriciously discounted all of the clear and consistent evidence that Plaintiff provided to show he was disabled; failed to follow its own medical reviewer's strong and repeated recommendations that it obtain all of Plaintiff's available medical information; arbitrarily discounted the determination of the Social Security Administration that Plaintiff was completed disabled; arbitrarily discounted the opinions of all of his treating physicians that he was disabled; failed to allow Plaintiff an opportunity to provide relevant medical information to the records reviewers; and closed its record on appeal without notice to Plaintiff.

Reliance attempts to insulate its decisions to ignore the substantial evidence and to fail to obtain the evidence that it knew was available, by asserting that its decision was justified by substantial evidence because it hired several independent medical reviewers. However, it is clear that those reviewers did not have the benefit of all of the necessary medical records, records that Reliance knew from those same experts was available and may have made a difference in their opinions. Dr. Fenichel twice reported that updated records from the VA should be obtained to determine if a neurological condition was the cause of Plaintiff's symptoms. Although she had one early set of those records at the time of the second report, that second report strongly recommended that the later records (the January 24, 2000 VA records), also be obtained to see if Plaintiff had a neurologic condition that has been the cause of his unusual presentation. Rather than obtaining the information and providing it to Dr. Fenichel who had recommended that it be obtained, Reliance sent it, along with Dr. Fenichel's second review of the admittedly incomplete records, to a doctor who is neither a neurologist nor a MS specialist.

In its appeal denial letter, Reliance relied upon the medical reviews of Dr. Fenichel and Dr. Hauptman. For the reasons discussed above, the court finds that it was arbitrary and capricious to rely on Dr. Fenichel's reviews when Reliance knew from Dr. Fenichel herself that there was evidence not provided to her that could have proven that Plaintiff's claim was valid. Similarly, it was arbitrary and capricious to rely on Dr. Weight's report, the original source of the accusation of malingering, without providing Dr. Weight the readily available test results, such as the Dr. Black tests, that supported Plaintiff's claim.

The extent to which Reliance created a skewed administrative record discounting all of the substantial evidence of Plaintiff's disability is shown by a comparison of the two reports Reliance relied upon to support its appeal denial. In Dr. Fenichel's first report, before she had the opportunity to review any of the VA records, she opined that Plaintiff's behavior was "doctor seeking" because he sought treatment from multiple physicians from multiple disciplines, indicating to her that he wanted to be disabled. Rec. 376. However, Dr. Hauptman's review of those same records subsequently faults Plaintiff for not following up a recommendation to see a particular specialist for eight months, and then going to the VA neurologist instead of a private physician. Rec. 384–5. Thus, Plaintiff's evidence is discounted because he sought too much medical assistance and

because he sought too little medical assistance.

 It is true, as argued by Reliance that the "treating physician" rule which was developed in the context of social security cases does not apply in ERISA cases *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)(courts may not require plan administrators afford treating physician opinions special weight nor may they "impose a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). However, it is also true that plan fiduciaries "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.*

The record reveals that the opinions of the physicians who had actually examined Plaintiff were simply discounted for various reasons, chiefly on the basis of a conversation reported by Dr. Weight, who did not have all the records, and upon the remarks in an early evaluation that Plaintiff reported that he did "some" gardening, pruning and exercising.

The court finds that it was not a reasoned decision for Reliance to discount all of the substantial evidence from many sources in favor of opinion of reviewers who either reviewed incomplete medical records or based their subsequent opinions on prior incomplete reviews of the medical evidence.

The *Gaither* case lays to rest Reliance's position that it was Plaintiff's job to provide all supporting evidence to Reliance. Plaintiff had no such responsibility because he was not informed of what information Reliance and its reviewers believed was relevant and missing. Under such circumstances fiduciaries such as Reliance "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitle-

ment and when they have little or no evidence in the record to refute that theory." *Gaither,* 388 F.3d at 774.

An example of Reliance's shutting its eyes to readily available information is its reliance on Dr. Hauptman's report as a basis for completely discounting Plaintiff's submission of the decision that he was disabled for purposes of social security. Dr. Hauptman discounted this because he opined that it did not include any analysis of the patient's medical condition upon which it was made. However, that reason was not communicated to Plaintiff before the appeal denial and he therefore had no opportunity to provide further information on his social security claim. Thus, Reliance's doctors reviewed the medical records, each building on the incomplete records review of the previous doctor. Reliance discounted evidence from Dr. Wade, Plaintiff's physician, regarding Plaintiff's limitations on sitting, standing and carrying and instead, it relied on Dr. Hauptman's cherry picking of the records to find all instances that he argued contradicted the limitations.

In addition, there appears to be a procedural irregularity in that the record on the administrative appeal was closed without telling Plaintiff. Reliance continued to accept information from Plaintiff without telling him that it considered the record closed and the decision made. Reliance's own records fail to establish the date at which its decision on appeal was communicated to Plaintiff or why, if the date was what it argues, it continued to accept information after the appeal decision was supposedly made and communicated to Plaintiff.

 In conclusion, the court finds that Reliance's decision to deny Plaintiff's claim for benefits was arbitrary and capricious because (1) Reliance arbitrarily refused to credit Plaintiff's reliable evidence, includ-

ing all of the opinions of his treating physicians; (2) Reliance arbitrarily shut its eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when there was little or no evidence in the record to refute that theory; (3) Reliance arbitrarily refused to ask for additional information that it believed was necessary to make a decision, such as the social security information and the VA records; and (4) Reliance arbitrarily closed the administrative record without informing Plaintiff.

In view of the court's conclusion that upon "a hard look at the evidence and arguments presented to the plan administrator" reveals that the decision was not "a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest," the court will reverse the decision denying benefits. Only by ignoring, discounting, or explaining away the bulk of medical information could Reliance make the statement "there are no demonstrated restrictions or limitations prohibiting Mr. Omasta's sustained full-time work activities" and that he has "no significant cognitive or physical impairments that supports total disability." Rec. at 377. There is no other explanation for Reliance's discounting of all of the evidence of impairments and its failure to provide its experts with easily available information other than the decision was tainted by Reliance's own conflict of interest.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM

 Plaintiff moves for leave to file a supplemental memorandum in support of his Motion for Summary Judgment. The court agrees with Defendant Reliance that the Supplemental Memorandum consists generally of additional argument that the employer, Telos', Choices Benefits booklet

should be considered the "Plan." However, the court will nonetheless grant the motion because the Supplemental Memorandum adds to the record many documents recently received from the newly added Defendant, Telos.

Because the court has found that Reliance's decision was arbitrary and capricious under the terms of the Plan, Plaintiff's argument that the less restrictive definition of disabled contained in the Choices 2000 Enrollment Code is now irrelevant. However, it appears to the court that the Supplemental Memorandum should be allowed because it provides a more complete record of the employer's plan information, information that now appears to be more relevant to Plaintiff's claims against his employer. However, the documents also provide a complete record of Plaintiff's position on the applicable plan in the event of appellate review.

### INTEREST

 The court finds that an award of prejudgment interest in this case is necessary to compensate the injured party, Mr. Omasta. The court further finds that the equities of this case do not preclude the award of pre-judgment interest. *Caldwell,* 287 F.3d at 1286. The court finds that the rate provided by Utah statute § 15–1–1 is the most appropriate rate. Post-judgment interest, of course, is set by federal law.

### ORDER

Based upon the foregoing, it is therefore

ORDERED that Plaintiff's Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Renewed Motion for Summary Judgment is GRANTED. It is further

ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART on the issue that the controlling

Plan at issue in this case is the insurance plan issued by Defendant Reliance Standard Life Insurance Company. It is further

ORDERED that the Defendant's Motion for Summary Judgment is otherwise DENIED. It is further

ORDERED that Plaintiff's Renewed Motion for Summary Judgment is DENIED IN PART on the issue of the applicable plan. It is further

ORDERED that Plaintiff's Renewed Motion for Summary Judgment is otherwise GRANTED and Defendant Reliance's denial of Plaintiff's claim for disability benefits is REVERSED as arbitrary and capricious. It is further

ORDERED that prejudgment interest at the rate provided by Utah law is awarded from the date the claim was first filed. It is further

ORDERED that post judgment interest be awarded at the rate set pursuant to 28 U.S.C. § 1961(a). It is further

ORDERED that Plaintiff's Request for Discovery is DENIED as moot.